UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MICHAEL HERETICK,

     Plaintiff,

v.                                CASE NO. 8:11-cv-2438-T-23TBM

PUBLIX SUPER MARKETS, INC.,

     Defendant.

_____/


## ORDER

     According to Michael Heretick, the ATM at a Publix supermarket charges a hidden transaction fee.  On behalf of himself and others allegedly charged a fee by a Publix ATM without notice, Heretick sued Publix in state court for violating the Florida Deceptive and Unfair Trade Practices Act and for possessing "money had and received."  Publix removes (Doc. 1) based on the Class Action Fairness Act (CAFA).  Arguing that Publix fails to establish that CAFA applies and that CAFA's "local controversy" exception in any event requires a return to state court, Heretick moves (Docs. 23, 25) to remand.

Publix operates more than a thousand ATMs across five southeastern states. The putative class includes "all persons" (except each judge and some of the counsel and staff in this action) whom a Publix ATM charged a fee "without notice." The allegations seem simple enough, but the allegations prove much less straightforward than the apparently straightforward class definition. The remainder of the complaint is oddly bashful; the complaint never unmistakably discloses the time or the amount of each surreptitious charge or whether Heretick incurred a surreptitious charge.

Nonetheless, the complaint conveys that Heretick used a Publix ATM for sixteen months, from November, 2009, to March, 2011, and was charged a uniform, two dollar transaction fee. Rather than allege that Heretick received no notice, the complaint alleges that, when Heretick used a Publix ATM, Publix lacked "a standard program [that] disclosed to consumers that a transaction fee would be charged." (Doc. 26, ¶ 10) To claim without more that an institution lacks "a standard program" evokes an institution acting inconsistently, based perhaps on local practice and not central policy. But Heretick says more. In the class allegation, the complaint states, "[Publix] has utilized uniform procedures and representations in the operation of its ATMs. Moreover, [Publix's] uniform failure to disclose to consumers that a fee will be charged to consumers who use its ATMs has caused damage to consumers." (Doc. 26, ¶ 18) Through these words, the complaint appears to clarify that no "standard program" for notification means a "uniform procedure" of no notification.

- 2 -

A casual and imprecise use of language complicates interpretation of the complaint.  The complaint alleges both no "standard program" of ATM operation and a "uniform procedure" of ATM operation, and the complaint fails to define or to use consistently important terms such as "consumer" and "user."  Because the complaint never explicitly narrows "consumers" or "users" to mean fewer than each consumer or user of a Publix ATM and because the complaint alleges "a uniform failure to disclose [the fee] to consumers" and a "uniform procedure [] in the operation of [Publix] ATMs," the reasonable reader must conclude that the complaint alleges each Publix ATM without notice charged each user a fee for each transaction.

If Publix shows by a preponderance of the evidence that the action concerns minimally diverse parties, a hundred or more of whom are plaintiffs seeking at least $5 million compensation for a common harm, CAFA presumes the action fit for federal court.  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1202-03 (11th Cir. 2007); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006).  Because Publix removes a complaint without a demand for a specific amount of damages, the preponderant evidence may include a declaration or "other documentation" from the removing party.  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754-56 (11th Cir. 2010).

Based on company records, a Publix senior accountant declares (Doc. 3) that Publix ATMs collected more than $5 million in transaction fees in 2010 and that more than a hundred individuals paid transaction fees.  Although Heretick objects that Publix's declaration fails to attest that a hundred or more ATM users "without notice" paid $5 million or more in transaction fees, the complaint alleges Publix's "uniform failure" to notify an ATM user of a fee.  Under the only reasonable interpretation of the complaint, the declaration is valid evidence that the action meets CAFA's amount-in-controversy and numerosity requirements.

Heretick raises what he calls "a similar case," *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006), in which, Heretick claims, "the defendant impermissibly included data not relevant to the class in asserting class jurisdiction."  According to Heretick, "the *Maytag* defendant included data concerning all ovens [sold], rather than, as the class definition stated, only those that incorporated a defective latch assembly."  Heretick misunderstands *Maytag*, an action with interesting similarities to this one.

Intending to sue Maytag for the sale of ovens with a defective door latch, the plaintiff identified the class as each purchaser in Florida of one from a range of Maytag oven models.  After removal the plaintiff narrowed the class to include only each purchaser in Florida of one from a range of Maytag oven models that contained the allegedly defective door latch.  Maytag submitted a declaration providing the

value of the ovens Maytag sold in Florida to the members of the initial putative class, and the district court apparently discounted the declaration for failing to address the value of the ovens sold to the members of the narrowed putative class.  The Eleventh Circuit concluded that "under the most logical reading" of the broader (and governing) initial class definition the declaration addressed the proper range of ovens. *Maytag Corp.*, 450 F.3d at 1331-32.  (Maytag's attempt to remove under CAFA failed on other grounds.)  If *Maytag* informs this action, the lesson is that, when suing in state court on behalf of a potentially large class and for a lot of money, the plaintiff should plead with scrupulous attention to the consistent meaning of words.  A slip of the pen might change the forum.

In *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010), the plaintiffs sued in state court seeking for themselves and a class the return of deposits from an apartment developer.  Documents attached to the complaint showed the amount of each deposit and the complaint claimed that the defendant's records would reveal the number of class members.  The defendant removed under CAFA and submitted a declaration attesting that the defendant's records listed more than $5 million in deposits from more than a hundred depositors.  608 F.3d at 748-49.  Noting that a company official was declaring under penalty of perjury his first-hand knowledge of the company's records, the court accepted the declaration as sufficient evidence that the defendant met CAFA's amount-in-controversy and numerosity requirements.

608 F.3d at 770-72.  Publix likewise submits the declaration of a company official who under penalty of perjury and from personal knowledge affirms that the company records show sufficient potential plaintiffs who seek sufficient money to satisfy CAFA.  Heretick provides no contrary evidence and never denies the accuracy of the declaration.  The circumstances helpfully resemble *Pretka*.

Heretick criticizes the notice of removal's allegation of minimal diversity, but common sense confirms that, at least, some non-citizen of Florida used a Publix ATM.  *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) ("courts may use . . . common sense in determining whether the case stated in the complaint meets federal jurisdictional requirements").  The complaint concedes the final CAFA element by alleging that the class suffered a common harm.  Publix successfully invokes federal jurisdiction under CAFA, and Heretick must either show that a CAFA exception applies or remain in federal court.

Heretick essays only the "local controversy" exception, which aims to keep in state court "a controversy that uniquely affects a particular locality to the exclusion of others."  *Evans*, 449 F.3d at 1163 (quoting S.Rep. No. 109-14 at 39 (2005)).  Publix asserts the absence of only one of the exception's elements, the requirement that more than two-thirds of the putative class's members are citizens of the state in which the action begins.  449 F.3d at 1163.  The burden of proof lies on Heretick.  449 F.3d at 1164.

Heretick concludes that, because the "store locator" page on Publix's website publicizes that more than two-thirds of Publix's stores (756 of 1,063; or 71 percent) are in Florida, more than two-thirds of the allegedly gypped Publix ATM users are Florida citizens. Heretick's conclusion must assume that each store features at least but only one ATM, that each ATM serves a roughly equal number of patrons, and that each ATM draws almost entirely citizens of the state in which the ATM is located (or draws Floridians using an ATM outside of Florida). No record evidence supports any of these necessary inferences. Requesting a "low proof standard" (whatever that is) because he has "presented all information presently available" to him, Heretick effectively concedes his inability to bear the burden of demonstrating a "local controversy." *Cf. Evans*, 449 F.3d at 1166.

Briefly examining *In re Sprint Nextel Corp.*, 593 F.3d 669 (7th Cir. 2010), suffices to show the margin by which Heretick fails to invoke the "local controversy" exception. Complaining of "artificially" high text-message charges, the plaintiff in *Sprint Nextel* sued Sprint in Kansas state court on behalf of a class delimited to individuals with a Kansas cell phone number who received their cell phone bill at a Kansas address. 593 F.3d at 671. Sprint removed under CAFA, and the plaintiff asserted CAFA's "home-state" exception, which like the "local controversy" exception includes a two-thirds citizenship requirement. Confident that a class limited to people with both a Kansas phone number and a Kansas address necessarily

includes mostly people from Kansas, the district court remanded.  Although

recognizing that the district court's approach "has some appeal" and that the class

probably enrolled mostly citizens of Kansas, the Seventh Circuit reversed and

concluded that with insufficient evidence a mere belief, even if rational, about the

class members' citizenship rested only on unwarrantable guesswork.  593 F.3d at

673-76.

      The motion (Doc. 23) is **DENIED**.

      ORDERED in Tampa, Florida, on January 26, 2012.

*Steven D. Merryday*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE